ORDERED.

Dated:  December 23, 2015

_____
Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re | CASE NO. 9:08-bk-04360-MGW |
| ULRICH FELIX ANTON ENGLER, PRIVATE COMMERCIAL OFFICE, INC., and PCO CLIENT MANAGEMENT, INC., | CHAPTER 7 (Substantively Consolidated) |
| Debtors. _____/ | |
| ROBERT E. TARDIF, JR., AS TRUSTEE FOR THE CHAPTER 7 BANKRUPTCY ESTATES OF ULRICH FELIX ANTON ENGLER AND PRIVATE COMMERCIAL OFFICE, INC., | ADV. PROC. NO. 9:10-ap-00494-MGW |
| Plaintiff, | |
| v. | |
| FRANK FORSTMANN, | |
| Defendant. _____/ | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS PROCEEDING came before the Court on April 29, 2014 at 9:30 a.m. for a trial between Robert E. Tardif (the "**Trustee**"), the Chapter 7 Trustee for the substantively consolidated bankruptcy estate of Ulrich Felix Anton Engler, Private Commercial Office, Inc., and PCO Client Management, Inc. ("**Engler**," "**PCO**," and "**PCOM**," respectively, or collectively the "**Debtors**") against Frank Forstmann (the "**Defendant**"). The Trustee sued

Forstmann under 11 U.S.C. §§ 544, 548, and 550, in addition to Chapter 726 of the Florida Statutes, to recover payments the Defendant received from the Debtor in connection with an international Ponzi scheme. After considering the undisputed facts and arguments of counsel, judgment will be entered for the Trustee.

## FINDINGS OF FACT

This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H), and (O).

### Background Facts

The facts of this case are largely undisputed[1] but a backstory is helpful for clarity of the record. Engler is a German citizen who perpetrated a massive Ponzi scheme in the Middle District of Florida where funds received from new investors were used to repay earlier investors, rather than fund the investments Engler promised. PCO and PCOM were utilized by Engler to perpetuate the Ponzi scheme. Investors happily invested money with Engler, PCO, and PCOM expecting a large return due to Engler's reputation for day trading. However, the promised returns were too good to be true. Engler swindled numerous investors over several years, many of whom reside in Germany.

On March 31, 2008, a group of creditors filed involuntary petitions for relief under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") against Engler and PCO. *See* Case Nos. 9:08-bk-04360-MGW (the "**Main Bankruptcy Case**") and 9:08-bk-04365-MGW. The Trustee was appointed on April 30, 2008. Later, on June 24, 2008, the Court entered an order substantively consolidating the assets and liabilities of Engler and PCO. The assets and liabilities of PCOM were substantively consolidated with Engler and PCO on April 23, 2010 *nunc pro tunc* to March 31, 2008.

---

[1] The parties filed a Joint Stipulation of Facts for Trial. Doc. 77.

Engler was a fugitive for a number of years before being arrested in Las Vegas, Nevada on July 25, 2012 by special agents and officers of the U.S. Immigration and Customs Enforcement's ("**ICE**") Homeland Security Investigations ("**HSI**"), ICE's Enforcement and Removal Operations ("**ERO**"), the United States Marshals Service and the Las Vegas Metropolitan Police Department. On August 17, 2012, Engler was deported to Germany. Later on March 4, 2013, the Mannheim Regional Court in Mannheim, Germany entered a judgment sentencing Engler to 102 months of imprisonment for fraud.

**Transfers between Forstmann and the Debtors**

Through a series of transfers from Forstmann to Engler's companies, PCO and PCOM, Forstmann was an investor in Engler's Ponzi scheme. The following are transfers between Forstmann and PCO/PCOM:

January 11, 2006 – Forstmann transferred $17,000 to PCO;

March 3, 2006 – PCO transferred $1,020 to Forstmann;

April 4, 2006 – PCO transferred $1,020 to Forstmann;

May 4, 2006 – PCO transferred $1,020 to Forstmann;

June 1, 2006 – PCO transferred $1,020 to Forstmann;

July 3, 2006 – PCO transferred $1,020 to Forstmann;

July 24, 2006 – PCO transferred $1,020 to Forstmann;

September 5, 2006 – PCO transferred $1,020.00 to Forstmann;

September 5, 2006 – Forstmann transferred $24,000.00 to PCO;

October 3, 2006 – PCO transferred $2,100.00 to Forstmann;

October 11, 2006 – Forstmann transferred $16,000.00 to PCO;

August 3, 2007 – PCOM wire transferred $102,078.27 to Forstmann.

The total transfers from the Debtors to Forstmann were $111,318.27 and the total transfers from Forstmann to the Debtors were $57,000.00. The net amount Forstmann received from the Debtors over the amount he invested with the Debtors is $54,318.27.

## CONCLUSIONS OF LAW

The Trustee is entitled to recover the net amounts Forstmann received from the Debtors. "A 'Ponzi scheme' is a fraudulent investment arrangement in which returns to investors come from monies obtained from new investors rather than an underlying business enterprise." *In re McCarn's Allstate Fin., Inc.*, 326 B.R. 843, 845 (Bankr. M.D. Fla. 2005) ("***McCarn's Allstate***"). Under Section 548 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statutes, the elements required to establish a fraudulent transfer are the following:

1) A debtor must have transferred property within two years (under Section 548) or four years (under Section 726.105) of the filing of the bankruptcy petition.

2) The transfer must have been made with actual intent to hinder, delay, or defraud any entity to which the debtor was indebted.

*See* 11 U.S.C. § 548 and Fla. Stat. § 726.105. Under Section 544 of the Bankruptcy Code, the Trustee "steps into the shoes of a creditor," whom may assert causes of action under state fraudulent conveyance laws, such as Florida Statute Section 726.105. *McCarn's Allstate*, 326 B.R. at 849. Moreover, in this case, similar to the 800 defrauded creditors in *McCarn's Allstate*, there are numerous creditors who were defrauded by Engler and who could have brought an action to recover fraudulent transfers.

Because the involuntary bankruptcy case was filed on March 31, 2008, the transfers dating back to 2006 between Forstmann and the Debtors are certainly within the four year look back period of Florida Statute Section 726.105(1)(a). The remaining question of whether there was actual intent is easily answered in this case. Many courts look to "badges of fraud" to

4

ascertain whether a debtor harbored fraudulent intent in making transfers to a defendant. *See In re Levine*, 134 F.3d 1046, 1053 (11th Cir. 1998). Bankruptcy Courts across the nation have determined that establishing a Ponzi scheme is sufficient to prove a debtor's intent to defraud. *See e.g., In re World Vision Entm't, Inc.,* 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002); *In re Taubman,* 160 B.R. 964, 978 (Bankr. S.D. Ohio 1993); *In re Independent Clearing House, Co.,* 77 B.R. 843 (D. Utah 1987).

As this Court has previously determined, "[o]ne way to establish the existence of a Ponzi scheme is through a guilty plea to an information or indictment that alleges facts sufficient to infer the existence of a Ponzi scheme." *McCarn's Allstate*, 326 B.R. at 851 (citing *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995) and *In re Ramirez Rodriguez*, 209 B.R. 424, 433 (Bankr. S.D. Tex. 1997)). It is clear from Engler's arrest, deportation, conviction, and imprisonment for fraud in Germany that he harbored fraudulent intent in making the subject transfers to the Defendant as part of his Ponzi scheme. Thus, the Trustee has established that the Debtors' transfers to Forstmann were fraudulent.

Next, under Section 550 of the Bankruptcy Code, avoided transfers under sections 544 or 548 are recoverable by the trustee "for the benefit of the estate" from an initial transferee of such transfers. 11 U.S.C. § 550(a). While Forstmann raises a good faith defense of Section 548(c) of the Bankruptcy Code, that section also requires that Forstmann give value for the subject transfers. The Debtors transferred $111,318.27 to Forstmann while Forstmann only transferred $57,000.00 to the Debtors. The net amount of $54,318.27 was money for which Forstmann gave no value. While there has been no showing that Forstmann was a wrongdoer in cahoots with Engler, "[n]either innocence in action nor unfairness in result is a defense." *McCarn's Allstate*, 326 B.R. at 852 (quoting *In re Mainely Payroll, Inc.,* 233 B.R. 591, 597 (Bankr. D. Me. 1999)).

Because Forstmann was an initial transferee from the Debtors, the Trustee may recover the avoided fraudulent transfers from Forstmann.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1) The Court enters judgment in favor of the Trustee against Forstmann in the amount of $54,318.27 for amounts fraudulently transferred by the Debtors to Forstmann.

2) The Court will enter a separate final judgment on which execution may issue.

\* \* \*

Robert F. Elgidely, Esq. is directed to serve a copy of these Findings of Fact and Conclusions of Law on interested parties and file a proof of service within 3 days of entry thereof.